UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:26-cv-06214-MCS-AS** | Date | July 28, 2026 |
| Title | ***Robles v. Delta Air Lines, Inc.*** | | |

Present: The Honorable Mark C. Scarsi, United States District Judge

| | |
|---|---|
| Stephen Montes Kerr | Not Reported |
| Deputy Clerk | Court Reporter |

| | |
|---|---|
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER REMANDING CASE (ECF NO. 17) (JS-6)**

Plaintiff Dontez Ochoa Robles moves to remand this action to the Los Angeles County Superior Court. (Mot., ECF 17.) Defendant Delta Air Lines, Inc., filed a brief opposing this motion. (Opp'n, ECF No. 18.) The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I. BACKGROUND

According to the complaint, Defendant employed Plaintiff as a customer service agent from March 2023 to March 2025. (Compl. ¶ 12, ECF No. 1.) Plaintiff contends that Defendant did not provide him with sufficient meal and rest breaks and did not fully compensate him for hours worked or vacation time accrued. (*Id.* ¶¶ 13–15.) Plaintiff further alleges that a manager assaulted him in August 2024, which he reported to human resources. (*Id.* ¶ 16.) Plaintiff also allegedly suffers from a disability for which "he was prescribed Meta Ray Ban smart glasses," but Defendant did not allow Plaintiff to wear the prescribed glasses while working. (*Id.* ¶ 17.) Plaintiff asserts that he was ultimately suspended without pay and terminated in retaliation for reporting the August 2024 assault and for requesting an

accommodation for his disability. (*Id.* ¶ 18.) After his termination, Plaintiff requested a copy of his personnel file, payroll records, and a signed release authorization, but Defendant did not provide the documents. (*Id.* ¶ 19.)

Based on these allegations, Plaintiff asserts six wage-and-hour claims under various sections of the California Labor Code. (*Id.* ¶¶ 20–52.) Plaintiff also brings claims under the California Fair Employment and Housing Act ("FEHA") and common law for: (1) disability and medical condition discrimination; (2) failure to engage in a good faith interactive process; (3) failure to accommodate a disability or medical condition; (4) failure to take all reasonable steps to prevent harassment, discrimination, and retaliation; (5) retaliation; and (6) wrongful termination. (*Id.* ¶¶ 53–111.) Plaintiff also brins one claims for unfair business practices under the California Unfair Competition Law and one claim for failure to produce personnel files and payroll records in violation of the Labor Code. (*Id.* ¶¶ 112–25.)

Plaintiff originated this action in the Los Angeles County Superior Court, and Defendant removed it to this Court, invoking diversity jurisdiction. (Notice of Removal ¶¶ 1, 4, ECF No. 1.) Plaintiff seeks to remand the case back to state court because the amount in controversy does not exceed the $75,000 jurisdictional threshold. (Mot. 7–12.)

## II. LEGAL STANDARD

Federal courts are of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action in state court to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). There is a "strong presumption" against removal jurisdiction, and the removing party bears the burden of proving that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

To invoke diversity jurisdiction, a party must demonstrate that there is complete diversity of citizenship between the parties and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in

controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

## III. DISCUSSION

While Plaintiff seeks various monetary remedies, including lost wages, damages, and penalties, the total amount in controversy is not clear from the face of the complaint. (*See* Compl., Prayer for Relief.) Therefore, Defendant must show that the amount in controversy more likely than not exceeds $75,000. Defendant has not met its burden.

First, Defendant calculates that Plaintiff seeks at least $108,993.60 in lost wages, consisting of $56,515.20 in back pay and $52,478.40 in front pay. (Opp'n 5; Notice of Removal ¶ 19.) A plaintiff may seek back pay and front pay as compensatory damages in connection with a FEHA claim. *See Olvera v. Quest Diagnostics*, No. 2:19-cv-06157-RGK-(SK), 2019 U.S. Dist. LEXIS 207496, at *5 (C.D. Cal. Dec. 2, 2019) (citing *Andrade v. Arby's Rest. Grp. Inc.*, 225 F. Supp. 3d 1115, 1139–40 (N.D. Cal. 2016)). For purposes of the jurisdictional inquiry in a removal case, back pay is calculated as lost wages between the date of termination up until the date of removal; front pay is calculated as lost wages between the date of removal and trial. *See id.* at *5. While the Court agrees that back and front pay are properly considered in the amount in controversy analysis, Defendant has not met its burden to establish that Plaintiff's claims place in controversy the amounts calculated by Defendant. In support of removal, Defendant provided a declaration from Laura Owens, a human resources manager employed by Defendant, stating that at the time of his termination, Plaintiff was scheduled to work 40 hours per week earning a wage of $25.23 per hour. (Owens Decl. ¶ 3, ECF No. 1-2.) Defendant multiplies these numbers by the number of weeks between Plaintiff's termination and Defendant's filing of the notice of removal, plus the estimated number of weeks between removal and a hypothetical future trial, to calculate Plaintiff's total back and front pay. (Notice of Removal ¶ 19.) Defendant does this based on the "[a]ssum[ption that] Plaintiff would have continued working the same schedule at his final rate of pay." (*Id.*) But Defendant offers no evidence to support such an assumption, such as historical data reflecting the number of hours Plaintiff actually worked during the two years preceding his termination. Ms. Owens's declaration similarly leaves uncertain whether Plaintiff regularly worked 40 hours per week before his termination. (*See* Owens Decl. ¶ 3.) Without additional factual information supporting the assumptions underlying its calculation, the Court cannot

conclude that Defendant has demonstrated the amount of front and back at stake beyond speculation. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden."). Defendant fails to present evidence to support the assumptions undergirding its estimate of lost wages, so the Court cannot appropriately assess the value of this category of damages.

Second, Defendant contends that Plaintiff seeks $24,535.60 in meal and rest period premiums. (Opp'n 5.) To arrive at this number, Defendant assumes that Plaintiff seeks premiums for "one hour per missed break per day" for the entire duration of his employment. (*Id.*; *accord* Notice of Removal ¶ 27.) But a daily violation rate "cannot reasonably be inferred from Plaintiff's (admittedly conclusory) allegations," *Blossom v. Waldorf Astoria Emp., LLC*, No. 2:23-cv-10510-MCS-PVC, 2024 U.S. Dist. LEXIS 29719, at *11 (C.D. Cal. Feb. 21, 2024) (Scarsi, J.)—here, that Plaintiff "consistently" worked eight hours per day and Defendant failed to provide meal periods and rest breaks "during the relevant period," (Compl. ¶¶ 23; 28); *cf. Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW (MANx), 2014 U.S. Dist. LEXIS 95620, at *8 (C.D. Cal. July 14, 2014) ("'[C]onsistently' does not necessarily amount to once per week. Some regularity can be discerned, but without further support, there is no justification for using a once-per-week rubric versus a twice-per-month rubric or a three-times-per-year rubric.").

Defendant next estimates that Plaintiff seeks $4,000 in wage statement penalties and $6,055.20 in waiting time penalties. (Opp'n 5–6.) But as with the meal and rest premiums, Defendant's calculation is based on an assumed 100% violation rate. (*See id.*; Notice of Removal ¶¶ 28–29.) "[W]ithout some grounding evidence" tending to support a 100% violation rate, such an assumption is unreasonable. *Blossom*, 2024 U.S. Dist. LEXIS 29719, at *13–14. Because it offers no evidence to justify this assumption, Defendant has failed to establish any amount in wage statement or waiting time penalties is placed in controversy. *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, No. 2:23-cv-02802-MCS-JC, 2023 U.S. Dist. LEXIS 142598, at *7–8 (C.D. Cal. Aug. 14, 2023) (Scarsi, J.) (assigning $0 to wage statement claim estimate defendant failed to support with evidence).

Defendant also contends that the Court can consider emotional distress and punitive damages in its amount in controversy analysis. (Opp'n 6.) "[T]he mere

possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). Here, Defendant provides no estimate whatsoever of the emotional distress or punitive damages Plaintiff might receiver, (*see* Opp'n 6–7; Notice of Removal ¶ 22), nor has it identified any comparable cases in which juries awarded punitive damages under similar facts, *see Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (noting that "[t]o establish probable punitive damages, [a] defendant may introduce evidence of jury verdicts in cases involving analogous facts"). Similarly, Defendant offers no evidence indicating that Plaintiff suffered any significant emotional distress from his termination that may lead to a sizeable award of emotional distress damages. *See Clark v. Chartis Glob. Serv.*, No. CV 11-02155 MMM (VBKx), 2011 U.S. Dist. LEXIS 164024, at *23–24 (C.D. Cal. July 29, 2011) ("[I]n the absence of evidence suggesting that an emotional distress claim will yield a sufficient amount in controversy, the court will not speculate as to the damages potentially embodied in plaintiff's allegation of emotional distress." (internal quotation marks omitted)).

Finally, Defendant argues that Plaintiff has placed $22,776.50 in attorneys' fees in controversy. (Notice of Removal ¶ 31; *see* Opp'n 6.) In support, Defendant points to several cases holding that 25% of the alleged damages is a reasonable estimate of attorneys' fees for purposes of calculating the amount in controversy in wage and hour cases. (Notice of Removal ¶ 31 (collecting cases).) But as discussed above, Defendant has not established damages beyond speculation, so its estimated attorneys' fees are similarly fatally speculative. *Cf. Edwards v. Ford Motor Co.*, No. CV 16-05852 BRO (PLAx), 2016 U.S. Dist. LEXIS 153618, at *14 (C.D. Cal. Nov. 4, 2016) ("Defendant failed to establish the amount of actual damages at issue, which is necessary to determine the total civil penalty."). Nor does Defendant provide any explanation as to why fees in this particular case should be valued consistent with other wage and hour cases. *Cf. Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020) ("All that Defendants claim is that the same counsel appears in each case and that the subject-matter of the cases are the same. They do not, however, compare or contrast the litigation strategies or the litigation timelines of the two cases." (citation omitted)).

Defendant's amount-in-controversy calculations are further undermined by Plaintiff's pre-removal service of an offer of compromise under California Code of Civil Procedure section 998 for exactly $75,000, inclusive of attorneys' fees and costs. (Westmoreland Decl. ¶¶ 5–7, ECF No. 17-1; *id.* Ex. A, ECF No. 17-1.) A settlement offer, while not dispositive, may be "relevant evidence of the amount in

controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F. 3d 837, 840 (9th Cir. 2002). "A plaintiff's damage estimate will not establish the amount in controversy, however, if it appears to be only a bold optimistic prediction." *Romsa v. Ikea U.S. W., Inc.*, No. 2:14-cv-05552-MMM (JEMx), 2014 WL 4273265, at *2 (C.D. Cal. Aug. 28, 2014) (internal quotation marks omitted). Indeed, courts in this district regularly discount offers to settle cases for greater than $75,000 when the settlement offer is not supported by any evidence or explanation as to how the plaintiff arrived at the figure. *See Alonzo v. Universal City Studios, LLC*, No. 2:25-cv-11197-FLA (SKx), 2026 WL 1950452, at *2 (C.D. Cal. July 6, 2026) (collecting cases). But a plaintiff's offer to settle a case for $75,000 or less suggests the plaintiff does not believe the amount in controversy is satisfied. *Ogden v. Dearborn Life Ins. Co.*, 644 F. Supp. 3d 559, 565 (D. Ariz. 2022). And a defendant's rejection of such a settlement offer indicates the defendant believes the case can be resolved for less. *Id.* Here, the fact that Plaintiff offered to settle the case for $75,000 and Defendant rejected that offer is strong evidence that both parties believe that the amount in controversy falls below the jurisdictional threshold.

This conclusion is further supported by Plaintiff's pre-removal responses to Defendant's request for admission, in which Plaintiff categorically denied that the damages Plaintiff seeks and the total amount in controversy exceed $75,000. (Westmoreland Decl. ¶¶ 8–11; *id.* Ex. B, at 3, ECF No. 17-1.) Pre-removal responses to requests for admission are properly considered when determining whether the amount in controversy is satisfied at the time of removal. *Rauda De Ayala v. Am. Airlines, Inc.*, No. 2:22-cv-07549-JLS-MAR, 2023 WL 397036, at *2 (C.D. Cal. Jan. 24, 2023). That Plaintiff affirmatively denied he is seeking more than $75,000 corroborates his position that the jurisdictional threshold is not satisfied. *Melaleuca, Inc. v. Foeller*, No. CV-09-517-E-BLW, 2009 WL 3617688, at *2 (D. Id. Oct. 29, 2009) (considering a plaintiff's denial of a request for admission that it sought more than $75,000 before remanding a case for lack of jurisdiction).

In sum, Defendant's amount-in-controversy calculations rest on unwarranted assumptions that are further undermined by Plaintiff's pre-removal offer of compromise and discovery responses. Defendant thus has not met its burden of showing the amount in controversy more likely than not exceeds $75,000.[1]

---

[1] Plaintiff requests an award of fees and costs incurred due to removal, (Mot. 13–14), which the Court denies for two reasons. First, Plaintiff failed to comply with the Court's rules governing motions for fees. (Initial Standing Order § 10(d), ECF No.

## IV. CONCLUSION

The Court grants Plaintiff's motion and remands the case to the Los Angeles County Superior Court, No. 26STCV07496. The Court directs the Clerk to effect the remand immediately and close the case.

**IT IS SO ORDERED.**

9.) Second, the Court's position on the dispositive issue is one on which reasonable minds disagree, so an award is inappropriate because there was an objectively reasonable basis for removal. *See Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).